UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| In re: Application of the Attorney General of Quebec for an Order to take Testimony for Use in a Foreign Proceeding Under 28 U.S.C. § 1782 | Case No. |

**Application and Memorandum of Law in Support For An Order Under 28 U.S.C. § 1782 To Issue a Subpoena to Paul Budge for the Taking of Trial Testimony for Use in a Foreign Proceeding**

## Introduction

On July 6, 2013, a train operated by Montreal, Maine and Atlantic Railway, (MMA) derailed in Lac Mégantic, Quebec, destroying much of the town and killing nearly 50 people. The tragic derailment resulted in a host of litigation. One such case—a consolidated litigation seeking recovery against Defendant Canadian Pacific Railway and its affiliates—has recently commenced a civil trial in Quebec Superior Court (the "Canadian Proceedings"). This Application for An Order Under 28 U.S.C. § 1782 To Issue a Subpoena to Paul Budge for the Taking of Trial Testimony for Use in a Foreign Proceeding ("Application"), asks for this Court's assistance in procuring the testimony

of a former MMA employee, Paul Budge, in that trial. The Quebec Superior Court has issued letters rogatory, requesting that this Court assist in providing Mr. Budge's testimony at trial. This Application is brought by the Attorney General of Quebec, a plaintiff in the Canadian Proceedings.

As a result of the pandemic, the trial in Quebec Superior Court allows for remote testimony by video-conference. Accordingly, the letters rogatory requests Mr. Budge's virtual trial testimony, by way of a video link on a specific day, October 5, 2021. If virtual testimony is not feasible, a remote deposition would be a satisfactory alternative.

Accordingly, the Attorney General of Quebec requests that this Court enter an order under 28 U.S.C. § 1782 To Issue Subpoenas to Paul Budge for taking trial testimony by (1) virtual appearance to the Canadian Proceedings or, in the alternative, (2) videotaped deposition testimony to be used in lieu of such appearance.

**Background**

On July 6, 2013, a crude-oil train transported by Montreal, Maine and Atlantic Railway ("MMA") derailed in downtown Lac Mégantic, Quebec, causing massive explosions that destroyed much of the downtown and killed nearly fifty people. Over eight years later, a civil trial has just recently commenced against the railroad, Canadian Pacific Railway and its affiliates, (collectively, "CP") that transported the train from its origin in North Dakota to Montreal, where it interchanged with MMA, continued on its

journey, and later derailed en route to New Brunswick. Arless-Frandsen Decl. ¶¶ 2 & 4. The trial in the Canadian Proceedings stems from consolidated cases in Quebec Superior Court involving three categories of Plaintiffs: (1) the Attorney General of Quebec; (2) class-action plaintiffs; and (3) subrogated insurers in an action styled, *Guy Ouellet et al. v. Canadian Pacific Railway et al*. ¶ 2. These three groups of Plaintiffs seek separate categories of damage from CP resulting from the derailment. *Id.* ¶ 3. The damages alleged by the Attorney General of Quebec reach in the millions of Canadian Dollars alone. *Id.*

As part of the Canadian Proceedings, the Petitioner for this Application, the Attorney General of Quebec, requested that the Quebec Superior Court issue letters rogatory to obtain testimonial evidence from multiple former employees of MMA to be used during the trial. *See, generally*, Arless-Frandsen Decl. Ex. A; ¶ 5 – 6. The Quebec Superior Court granted the request and issued a Request for International Judicial Assistance (Letters Rogatory). *See, e.g.,* Arless-Frandsen Decl. Ex. A. This Application requests the testimony of Mr. Paul Budge, a former employee of MMA, who was a superintendent and whose testimony is important on the operational practices of MMA and its interactions with other railways regarding MMA's operations. *Id.* ¶ 7.

Of note, as a result of the pandemic's effect on the administration of trial proceedings and more widespread allowance of remote testimony, the Letters Rogatory specifically requests that Mr. Paul Budge, a former MMA employee, "attend a virtual

journey, and later derailed en route to New Brunswick. Arless-Frandsen Decl. ¶¶ 2 & 4. The trial in the Canadian Proceedings stems from consolidated cases in Quebec Superior Court involving three categories of Plaintiffs: (1) the Attorney General of Quebec; (2) class-action plaintiffs; and (3) subrogated insurers in an action styled, *Guy Ouellet et al. v. Canadian Pacific Railway et al*. ¶ 2. These three groups of Plaintiffs seek separate categories of damage from CP resulting from the derailment. *Id.* ¶ 3. The damages alleged by the Attorney General of Quebec reach in the millions of Canadian Dollars alone. *Id.*

As part of the Canadian Proceedings, the Petitioner for this Application, the Attorney General of Quebec, requested that the Quebec Superior Court issue letters rogatory to obtain testimonial evidence from multiple former employees of MMA to be used during the trial. *See, generally*, Arless-Frandsen Decl. Ex. A; ¶ 5 – 6. The Quebec Superior Court granted the request and issued a Request for International Judicial Assistance (Letters Rogatory). *See, e.g.,* Arless-Frandsen Decl. Ex. A. This Application requests the testimony of Mr. Paul Budge, a former employee of MMA, who was a superintendent and whose testimony is important on the operational practices of MMA and its interactions with other railways regarding MMA's operations. *Id.* ¶ 7.

Of note, as a result of the pandemic's effect on the administration of trial proceedings and more widespread allowance of remote testimony, the Letters Rogatory specifically requests that Mr. Paul Budge, a former MMA employee, "attend a virtual

hearing before the Quebec Superior Court to be examined and cross examined in the Lac-Mégantic litigation for a maximum of one day on October 5, 2021." Arless-Frandsen Decl. Ex. A at ¶ 5.1.  The Letters Rogatory provides specific details on how to access the virtual appearance and contact information should the witness need additional assistance.  *Id.*  If such remote testimony is not feasible, the Quebec Attorney General would seek to remotely depose Mr. Budge and use that testimony as a substitute for live testimony.  Such deposition can be arranged at a time and place convenient to Mr. Budge.  Arless-Frandsen Decl. ¶ 9.

On September 9, 2021, the Quebec Superior Court granted the motion, requesting that this Court:

- Issue a subpoena order Mr. Budge to attend, via remote video feed, trial on October 5, 2021
- Order that while testifying, Mr. Budge may be represented or accompanied by counsel
- Order that the Civil Code of Quebec, the Code of Civil Procedure, and other rules in force in Quebec, will govern the rules of procedure and evidence, including the requirement to swear an oath
- Order that the judge signing the Letters Rogatory, Martin Bureau, J.C.S. of the Quebec Superior Court be appointed rogatory commissioner as required by Article 500 of the Code of Civil Procedure
- Authorize Paul Budge to be examined and cross-examined on any fact or subject matter relevant to the Lac Mégantic Litigation.

Arless-Frandsen Decl. Ex. A. ¶ 5.1 – 5.5.

This Application followed.

## Legal Standards

Under 28 U.S.C. § 1782, a district court may permit discovery or order that testimony be given in the United States for use in a foreign proceeding. Section 1782 provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign international tribunal . . .

28 U.S.C. § 1782. Section 1782 further states that any such order "may be made pursuant to a letter rogatory issued." *Id.* Alternatively, a foreign or international tribunal, or an "interested person" may request such an order from the district court. *Id.*

Section 1782 allows for discovery to proceed in accordance with the procedural rules of the foreign tribunal, but only if the order specifically sets forth such procedures. 28 U.S.C. § 1782. "To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken . . . in accordance with the Federal Rules of Civil Procedure." *Id.*

"Applications made under 28 U.S.C. § 1782 are typically considered on an *ex parte* basis, since "parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it." *In re Med. Corp. Seishinkai*, No. 21-mc-80160, 2021 WL 3514072, at *2 (N.D. Cal. Aug. 10, 2021); *see also, In re Application of Masters for an Order Pursuant to 28*

5

*U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding,* 315 F. Supp.3d 269, 272 (D.D.C. 2018) ("district courts are generally authorized to review a § 1782 application on an ex parte basis."). Accordingly, orders granting § 1782 applications typically provide only that the discovery is authorized, and the party subject to the order "may still raise objections and exercise its due process rights by challenging the discovery after it is issue via a motion to quash..." *In re Med. Corp.*, 2021 WL 3514072, at *2

An application under Section 1782 must satisfy three statutory requirements: (1) the person from whom the discovery is sought resides (or is found) in the district of the district court to which the application is made; (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person. *In re Schlich*, 893 F.3d 40, 46 (1st Cir. 2018).

If the three statutory requirements are met, a district court must then consider four discretionary factors, (the "*Intel*" factors) in deciding whether to grant a 1782 application: (1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or

the United States; and (4) whether the subpoenas contain unduly intrusive or burdensome requests. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 – 65 (2004); *In re Porche Automobil Holding SE*, 985 F.3d 115, 120 (1st Cir. 2021).

A district court has discretion in applying both the statutory and *Intel* factors to a Section 1782 request. *In re Porche*, 985 F.3d at 120.

## Argument

**1. The Application Satisfies the Statutory Requirements of Section 1782.**

Section 1782's statutory requirements are easily satisfied here. *First,* the person from whom testimony is sought, Mr. Paul Budge, resides in the District of Maine. Upon a diligent search, the Attorney General of Quebec has determined that Mr. Budge resides in Eddington, Maine. Arless-Frandsen Decl. ¶ 10. *Second,* the testimony of Mr. Budge is for direct use in a foreign proceeding before a foreign tribunal. The Canadian Proceedings has progressed to trial, which remains ongoing, and Mr. Budge's testimony will be part of that trial—either by remote testimony or by videotaped deposition. *Third*, this application is made by an interested person, a party to the Canadian Proceedings, *Intel,* 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782"…).

Arless-Frandsen Decl. ¶ 2.  And this request is also made pursuant to Letters Rogatory issued by the Quebec Superior Court, a foreign tribunal.[1]  Arless-Frandsen Decl. Ex A.

**2. The Application Satisfies the Discretionary Factors of *Intel Corp.***

The *Intel* factors are also met here.  *First,* there can be no question that the testimony sought here, by Mr. Budge who resides in the United States, cannot be ordered by the Quebec Superior Court, which has no jurisdiction over Mr. Budge and cannot compel him to testify in Quebec.  And this is not the case where Mr. Budge is a participant in the Canadian Proceedings; he is a third-party witness who years ago worked for MMA.  *See id* ¶ 2.

*Second*, the nature of the Canadian Proceedings strongly militates in favor of granting the application.  This Court is fully aware of the tragic nature of the Lac Mégantic train derailment: "On July 6, 2013, the MMA freight train carrying the oil derailed in Lac-Mégantic, Québec, sparking massive explosions that destroyed part of the town and killed nearly fifty people."  *In re Montreal, Maine & Atl. Ry. Ltd.*, 956 F.3d 1, 3 (1st Cir. 2020).  The patent gravity of this event, and consequently, the Canadian Proceedings themselves strongly supports granting the application, which will aide ongoing trial in Quebec Superior Court.  *See* Arless-Frandsen Decl. ¶ 7.  Moreover, this Court has recognized the cooperative assistance between it and the tribunals

---

[1] Of note, "Canada, which is not a party to the Hauge Convention on the Taking of Evidence Abroad in Civil of Commercial Matters, [and] applies its own domestic statute or common law to letters rogatory." *Goldberg v. Dufour*, No. 2:17-cv-00061, 2020 WL 373206 at *4 (D. Vt. Jan. 23, 2020) (internal quotes omitted).

immediately to the north. *See, e.g., Marical Inv. v. Cook Aquaculture Inc.*, No. 1:14-cv-00366, 2017 WL 3142469 at *5 (granting request for Letters Rogatory, including reciprocity provision that "this Court stands ready to extend similar assistance to the judicial tribunals of Canada pursuant to 28 U.S.C. § 1782(a).").

*Third*, this request does raise any risks of subverting the proof gathering restrictions in Quebec. Indeed, the Quebec Superior Court has specifically requested the judicial assistance of this Court in securing the testimony of Mr. Budge to aide in the Canadian Proceedings. *See* Arless-Frandsen Decl. Ex. A.

*Fourth*, the subpoena would not contain any unduly burdensome or intrusive requests. Mr. Budge is simply requested to provide trial testimony, either by remote video-conference, or, alternatively, by a videotaped deposition that will serve the same purpose. He has not previously been deposed in the Canadian Proceedings. *Id.* at ¶ 12. Remote trial testimony can be accomplished though any computer with an internet connection. Deposition testimony can be arranged at a time and place convenient to Mr. Budge, and also be conducted remotely. In all events, Mr. Budge's testimony will not exceed one day. *Id.* ¶ 11; Ex. A.

**3. Remote testimony in a foreign proceeding.**

This Application's request for the issuance of a subpoena to remotely testify in proceedings in Canada, pursuant to Letters Rogatory, is a novel consequence of the pandemic's upending of traditional trial practice. It appears no court has specifically

addressed remote trial testimony in a foreign proceeding through the Letters Rogatory process. However, application of the Federal Rules of Civil Procedure support the authorization of a "remote" trial subpoena in these circumstances.

It is within this Court's power to order remote testimony. *See* Fed. R. Civ. P. 43(a) (allowing testimony in open court by contemporaneous transmission from a different location, upon good cause shown). Recently, this Court agreed with a group of courts that "a party may be able to use Rules 43(a) and 45(c) to compel a witness to testify remotely from a location within 100 miles of her residence but only upon a showing of good cause in compelling circumstances." *Official Committee of Unsecured Creditors v. Calpers Corp. Partners LLC*, No. 1:18-cv-68, 2021 WL 3081880, at *3 (D. Me. July 20, 2021).

"Good cause in compelling circumstances" are present here. *See id*; Fed. R. Civ. P. 43(a). First and foremost, the Quebec Superior Court—and the judge overseeing the trial in the Canadian Proceedings—has specifically requested such remote testimony. Arless-Frandsen Decl. Ex. A. This goes significantly further than the example provided in the Advisory Committee's 1996 Note to Rule 43 of meeting the Rule's standard, "Good Cause and compelling circumstances may be established with relative ease if all parties agree that testimony should be presented by transmission. The Court is not bound by a stipulation, however, and can insist on live testimony." Here, the court presiding over trial has specially *allowed* for Mr. Budge's remote testimony. Moreover,

10

unlike the circumstances in *Calpers*, the Attorney General of Quebec has not conducted discovery on Mr. Budge.  *C.f., Calpers*, 2021 WL 3081880 at * 4. ("CCP has the testimony of Mr. Van Scotter as record by stenographer at his lengthy deposition and can offer it at trial."); *see also* Arless-Frandsen Decl. ¶ 12.  Finally, in recognition of the uniqueness of this request and the perhaps extra weight placed on a witness appearing virtually in a foreign court, this Application does not request absolute compliance with any authorized trial subpoena.  Rather, this Application requests that the Court enter an order that authorizes the issuance of a trial subpoena, but in essence, allows Mr. Budge the choice of either: (a) remote trial testimony or, in the alternative, (b) a remote videotaped deposition.  Providing this choice allows for Mr. Budge's trial testimony to be obtained in most efficient manner, while respecting the rights of Mr. Budge and those of the Attorney General to obtain his trial testimony.

## Conclusion

For these reasons, the Attorney General of Quebec respectfully requests that the Court enter an order, granting the application and:

(i) authorizing the issuance of a subpoena for Mr. Budge to appear and testify at a hearing in a civil action ("Trial Subpoena") by remote means as specifically described in the Letters Rogatory, Paragraph 5.1;

(ii) authorizing, in the alternative, the issuance of a subpoena for Mr. Budge to testify at a deposition in a civil action only if Mr. Budge objects to or does not appear and testify in the Canadian Proceedings pursuant to the Trial Subpoena;

(iii)  order that a copy of the Court's order be served with any authorized Subpoena;

(iv) order that, in accordance with the Letters Rogatory Paragraph 5.2, Mr. Budge may be represented or accompanied by counsel if desired during any such testimony;

(v) order that, in accordance with the Letters Rogatory Paragraph 5.3, for any such testimony, governing rules of procedure and evidence, including the requirement to swear an oath, will be those in force in Quebec and stipulated, among others in the Civil Code of Quebec and the Code of Civil Procedure;

(vi) order that, in accordance with the Letters Rogatory Paragraph 5.4, the Honourable Martin Bureau, J.C.S., of the Quebec Superior Court presiding over the Canadian Proceedings be appointed Rogatory commissioner as required by Article 500 of the Code of Civil Procedure;

(v) authorize Paul Budge to be examined and cross-examined on any fact or subject matter relevant to the Lac-Mégantic Litigation that is not violative of any legally applicable privilege, in accordance with the Letters Rogatory Paragraph 5.5 and 28 U.S.C. § 1782.

Dated: September 24, 2021

/s/ *John A. Woodcock III*
John A. Woodcock III
Bernstein Shur
100 Middle Street
PO Box 9729
Portland, ME 04104-5029
207-774-1200
jwoodcock@bernsteinshur.com

*Attorney for Petitioner*
*The Attorney General of Quebec*